IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ANR COMPANY, INC.<br><br>Appellant,<br><br><br>v.<br><br>KENNETH A. RUSHTON, Trustee, et al.,<br><br>Appellees. | MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS APPEAL AS MOOT<br><br><br><br>Case No. 2:10-CV-79 TS |

This matter is before the Court on appellee Kenneth A. Rushton, Chapter 7 Trustee of the

Estate of C.W. Mining Company ("Trustee") and Interested Parties Rhino Energy LLC ("Rhino")

and Castle Valley Mining LLC's ("Castle Valley") Joint Motion for Dismissal of Appeal as

Moot.[1]  For the reasons discussed more fully below, the Court will grant the Motion.

I.  BACKGROUND

This dispute arises out of the involuntary Chapter 7 bankruptcy proceedings of C.W.

Mining Company ("CWM").  Before entering bankruptcy, CWM was in the business of mining

coal.  In September of 1999, ANR Company, Inc. ("ANR") entered into a Coal Operating

Agreement (the "ANR Agreement") with CWM.  Pursuant to the ANR Agreement, ANR gave

_____

[1]Docket No. 21.

CWM the right to mine coal on ANR's property located in Carbon County.  This property was located adjacent to an underground mine CWM was then mining known as the Bear Canyon Mine.

During September of 1999, CWM also entered into a Logical Mining Unit Agreement ("LMU Agreement") with ANR, C.O.P. Coal Development Company, and Hiawatha Coal Company, Inc. ("Hiawatha").  Pertinent to this appeal, the LMU Agreement contained the following clause: "This agreement may be terminated by any party upon sixty (60) days written notice to the other parties and will automatically terminate upon the expiration of the Coal Mining Lease between ANR and Hiawatha. . . .  Termination of this agreement shall also terminate the Coal Operating Agreement between ANR and CWM."[2]  The LMU Agreement further provided that termination of the LMU Agreement would automatically terminate the ANR Agreement.  Both parties agree that the LMU Agreement terminated no later than April 10, 2001.[3]

The bankruptcy court found that the ANR Agreement was "re-executed by the relevant parties after April 10, 2001 but before April 20, 2001."[4]  Based on this determination, the bankruptcy court further found that (1) the ANR Agreement was not in default; (2) the ANR Agreement remained in full force and effect as of the petition date; and (3) the ANR Agreement is a separate agreement from the LMU Agreement.  The bankruptcy court specifically found that

---

[2]Docket No. 26 Ex. A, at 2.

[3]*See* Docket No. 23 Ex. 1, at 6.

[4]*Id*. at 7.

the LMU Agreement was not re-executed and held that "the LMU Agreement is ineffective and nonbinding on this estate or any assignee of the Trustee."[5]

Pursuant to the above, the bankruptcy court entered a sale order (the "Sale Order") on August 4, 2010, which specifically incorporated the ANR Agreement as one of CWM's assets.[6] The Sale Order provided for the purchase by Rhino of virtually all of CWM's assets for a total purchase price of $15 million.  No party to the underlying bankruptcy proceedings sought a stay of the Sale Order and, thus, the assets were conveyed on August 25, 2010.[7]  Since that time, Rhino and Castle Valley have expended substantial money and time in seeking to make the assets of the CWM estate productive.

The parties dispute the following issues ANR raises in this appeal:

1.    Whether the [bankruptcy court] erred in granting the Trustee's specific prayer for relief that the LMU [A]greement is ineffective and nonbinding on this estate or any assignee of the Trustee under §§ 365 or 363.
2.    Whether the [bankruptcy court] erred in finding that the ANR . . . Agreement was re-executed by the relevant parties after April 10, 2001 but before April 20, 2001.
. . .
4.    Whether the [bankruptcy court] erred in concluding that the ANR . . . Agreement is a separate agreement that remained in full force and effect as of the petition date.
5.    Whether the [bankruptcy court] erred in concluding that re-executing of the ANR . . . Agreement renewed and ratified it independently of the LMU Agreement.
6.    Whether the [bankruptcy court] erred in concluding that no basis exists for resurrecting the terminated LMU Agreement.
. . .

---

[5]*Id*. at 11.

[6]*In re C.W. Mining Company*, No. 08-20105 at Docket No. 1558.

[7]The assets were actually conveyed to Castle Valley, a wholly-owned subsidiary of Rhino.

3

8.      Whether the [bankruptcy court] erred in concluding that the ANR . . .
        Agreement was not void upon its inception and did not otherwise
        terminate between the time of its re-execution and the petition date.

9.      Whether the [bankruptcy court] erred in concluding that the parties did not
        mutually abandon the ANR . . . Agreement.

10.     Whether the [bankruptcy court] erred in concluding that [CWM] did not
        breach the ANR . . . Agreement when it did not perform any of its duties
        under the agreement.

11.     Whether the [bankruptcy court] erred in concluding that the execution of a
        duplicate original of the ANR Lease, as an exhibit to the LMU Agreement,
        created a new agreement independent of the LMU Agreement.

12.     Whether the [bankruptcy court] erred in denying ANR's Motion for Partial
        Summary Judgment on [the] ANR Lease.

. . .

14.     Whether the [bankruptcy court] erred in finding the ANR [] Agreement
        enforceable against ANR when . . . [CWM] had no mining permit to mine
        the ANR property and could not possibly comply with the terms of the
        agreement.[8]

## II.  DISCUSSION

The Trustee and Interested Parties assert that the Court is without jurisdiction to

determine this appeal (1) because the relief sought by ANR seeks to upset the sale of the ANR

Agreement to Rhino in contravention of the mootness doctrine found in 11 U.S.C. § 363(m) and

(2) because, even if the Court finds § 363(m) inapplicable, the Court should apply the doctrine of

equitable mootness and dismiss ANR's appeal.

A.      11 U.S.C. § 363(m)

The Trustee and Interested Parties assert that this appeal is moot under § 363(m) because

(1) the ANR Agreement was included in the sale to a good faith purchaser, (2) ANR did not seek

a stay of the Sale Order, and (3) a ruling for ANR in this appeal would affect the validity of the

---

[8]Docket No. 2, at 3-4.

Sale Order.  ANR contends that § 363(m) does not apply to this appeal because ANR is not

seeking to invalidate or overturn the sale of the mining assets to Rhino; rather, it seeks "only the

relief the Court has power to award."[9]

Subsection 363(m) provides:

The reversal or modification on appeal of an authorization under subsection (b) or
(c) of this section of a sale or lease of property does not affect the validity of a sale
or lease under such authorization to an entity that purchased or leased such
property in good faith, whether or not such entity knew of the pendency of the
appeal, unless such authorization and such sale or lease were stayed pending
appeal.

Here, ANR does not dispute that Rhino is a good faith purchaser.  It is also undisputed

that ANR did not seek to stay the Sale Order.  Thus, "[t]he mootness question turns on what

relief is available to [ANR] if it were to prevail in this appeal."[10]  "[Section] 363(m) forecloses

any remedy . . . that would affect the validity of the trustee's sale.  But it does not preclude a

remedy that would not affect the validity of the sale."[11]  Furthermore, "[t]he burden of showing

mootness is on the trustee, which here means showing that [ANR] would not have such a

remedy."[12]

---

[9]Docket No. 25, at 2.

[10]*C.O.P. Coal Dev. Co. v. C.W. Mining Co. (In re C.W. Mining Co.)*, 641 F.3d 1235, 1239
(10th Cir. 2011) (citing *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992) (noting
that appeal should be dismissed as moot if it is "impossible for the court to grant any effectual
relief whatever") and *Osborn v. Durant Bank & Trust Co. (In re Osborn)*, 24 F.3d 1199, 1203
(10th Cir. 1994) (holding "that because it is not impossible for the court to grant some measure
of effective relief, the Osborns' appeal is not moot")).

[11]*Id.*

[12]*Id.*

Through this appeal, ANR seeks to overturn the bankruptcy court's findings:  (1) that the ANR Agreement was a separate agreement from the LMU Agreement; (2) that the ANR Agreement remained in full force and effect; and (3) that CWM was not in default of the ANR Agreement.  The Trustee and Interested Parties properly assert that the Sale Order was premised on each of the above listed findings.  Thus, the Court could not grant the requested relief and overturn said findings without affecting the validity of the Sale Order.

ANR contends that "[t]he appropriate remedy for several of the other issues in this appeal may also be in the form of equitable relief."[13]  However, the only equitable relief ANR seeks is declaratory relief relating to the terms of the LMU Agreement that were not included in the bankruptcy court's interpretation of the ANR Agreement.  Any such declaratory relief would necessarily call into question the bankruptcy court's interpretation of the ANR Agreement and, therefore, would affect the validity of the Sale Order.

In sum, because the relief ANR seeks in this appeal would necessarily affect the validity of the Sale Order, the Court finds that the Trustee has met his burden to establish mootness under § 363(m).  For this reason, the Court is without jurisdiction to hear ANR's appeal.

B.     EQUITABLE MOOTNESS

As an alternative ground for granting the instant Motion, the Court will consider whether this appeal is moot under the doctrine of equitable mootness.  "The equitable mootness doctrine

---

[13]Docket No. 25, at 7.

allows a court to decline to hear a bankruptcy appeal, even when relief could be granted, if implementing the relief would be inequitable."[14]

As a threshold issue, it must be determined whether the doctrine of equitable mootness is applicable in the context of a Chapter 7 bankruptcy proceeding.

The Tenth Circuit formally adopted the doctrine of equitable mootness in the case of *In re Paige*.[15] "*Paige*, like almost all cases in which the doctrine of equitable mootness has been invoked, involved a confirmed Chapter 11 reorganization plan that had been substantially consummated."[16] In *C.O.P. Coal Dev. Co. v. C.W. Mining Co. (In re C.W. Mining Co.)*,[17] the Tenth Circuit declined to reach the issue of whether the equitable mootness doctrine applies to Chapter 7 proceedings.

> The equitable mootness doctrine allows a court to decline to hear a bankruptcy appeal, even when relief could be granted, if implementing the relief would be inequitable. We have adopted this doctrine in the context of Chapter 11 reorganization plans, but we have not applied it in the Chapter 7 setting. Even if it does apply, we are not required to do so as it is discretionary with the court. Rather than decide whether the doctrine can be applied, and, if so, weigh the doctrine's six factors in this case in the face of an underdeveloped record on this issue, we think the better and more appropriate course is to resolve this appeal on the merits. [18]

---

[14]*C.O.P. Coal*, 641 F.3d at 1239-40 (internal citation omitted).

[15]584 F.3d 1327 (10th Cir. 2009).

[16]*C.W. Mining Co. v. Aquila, Inc. (In re C.W. Mining Co.)*, 431 B.R. 307, 2009 WL 4798264, at *4 (10th Cir. BAP 2009), *rev'd on other grounds*, 636 F.3d 1257 (10th Cir. 2011).

[17]*C.O.P. Coal*, 641 F.3d 1235.

[18]*Id*. at 1239-40 (citing *Paige*, 548 F.3d at 1335-38 n.7).

In both *Paige* and *C.O.P. Coal*, the Bankruptcy Appellate Panel for the Tenth Circuit ("BAP") and the Tenth Circuit Court of Appeals declined to apply the doctrine of equitable mootness in favor of reaching the merits of the subject appeals. However, the holdings and rationale of those cases do not appear to stand for the proposition—as ANR would have this Court believe—that equitable mootness definitively does not apply to Chapter 7 bankruptcy appeals.

While the Tenth Circuit has yet to apply the equitable mootness doctrine to a Chapter 7 bankruptcy, other courts have applied equitable mootness in the liquidation context. For example, the Ninth Circuit has applied the equitable mootness doctrine in both Chapter 7[19] and Chapter 13 liquidation proceedings.[20] The Ninth Circuit is not alone, as other circuits have applied the equitable mootness doctrine in the context of Chapter 7 bankruptcies in the same manner and based on the same policy considerations as Chapter 11 proceedings.[21] Indeed, when confronted with this issue, no circuit has affirmatively held equitable mootness inapplicable.[22]

---

[19]*Fitzgerald v. Ninn Worx Sr, Inc. (In re Fitzgerald)*, 428 B.R. 872 (9th Cir. BAP 2010).

[20]*Id*. at 881 (citing *Suter v. Goedert*, 504 F.3d 982, 987 (9th Cir. 2007)).

[21]*See Hicks, Muse & Co., Inc. v. Brandt (In re Healthco Int'l, Inc.)*, 136 F.3d 45 (1st Cir. 1998); *Drawbridge Special Opportunities Fund v. Shawnee Hills, Inc. (In re Shawnee Hills, Inc.)*, 125 F. App'x 466 (4th Cir. 2005) (unpublished) (holding that bank's appeal of district court's ruling that bank had to honor Chapter 7 debtor-employer's prepetition payroll checks was equitably moot, where hundreds of employees had already cashed their checks, bank had failed to seek stay of bankruptcy court's order requiring bank to honor checks, and a reversal of that order would substantially affect the equitable relief granted and could significantly impact the third-party employees, who were not parties to the appeal and had received no notice that bank might seek to compel them to disgorge their wages).

[22]*See In re San Patricio Cnty. Cmty. Action Agency*, 575 F.3d 553, 558 (5th Cir. 2009) (holding that "[i]t is certainly arguable that equitable mootness has no application to an appeal in

After thorough review of the relevant case law, the Court is persuaded that equitable mootness should apply.[23]  In keeping with those circuits that have applied equitable mootness to Chapter 7 proceedings, the Court will adopt the same approach taken when applying equitable mootness to Chapter 11 proceedings.

The Tenth Circuit has set out the following six-part test for determining whether an appeal is equitably moot:

> (1) Has the appellant sought and/or obtained a stay pending appeal? (2) Has the appealed plan been substantially consummated? (3) Will the rights of innocent third parties be adversely affected by reversal of the confirmed plan? (4) Will the public-policy need for reliance on the confirmed bankruptcy plan—and the need for creditors generally to be able to rely on bankruptcy court decisions—be undermined by reversal of the plan? (5) If appellant's challenge were upheld, what would be the likely impact upon a successful reorganization of the debtor?  And (6) based upon a quick look at the merits of appellant's challenge to the plan, is appellant's challenge legally meritorious or equitably compelling?  These six factors are not necessarily conclusive, nor will each factor always merit equal weight.[24]

The Court will address each of the six factors in turn.

---

a Chapter 7 liquidation," but indicating that there was no need to make such a comprehensive statement about equitable mootness in that case because "under traditional equitable mootness analysis, [the] case [was] not moot"); *see also In re Anthanassious*, 418 F. App'x 91, 94 n.3 (3d Cir. 2011) (unpublished).

[23]The Court would further note that this approach is supported by the facts of *Paige*.  As the Tenth Circuit noted, the trustee in that case "was initially appointed as the Chapter 7 Trustee. However, after filing under Chapter 7, the debtor requested that the court convert his Chapter 7 filing into a Chapter 11 filing, and the bankruptcy court granted that motion. [The Trustee] subsequently moved to convert the case back to Chapter 7, but the bankruptcy court denied that motion.  However, the court subsequently granted [the Trustee]'s motion to become the Chapter 11 trustee."  *Paige*, 584 F.3d at 1331 n.2.  Thus, *Paige* involved a proceeding that in many ways resembled a Chapter 7, rather than a Chapter 11 bankruptcy.

[24]*Id*. at 1337-39.

9

1.    STAY

"The first question in an equitable mootness inquiry is whether the appellant
secured a stay to prevent execution of the reorganization plan."  This inquiry
really involves two questions: (1) Did the party seeking reversal try to obtain a
stay? (2) Assuming the party seeking reversal sought a stay, was that party
successful in obtaining a stay pending appeal?[25]

The Tenth Circuit has instructed that "both of these questions are significant."[26]  "On the one

hand, an appellant's complete and unjustified failure to seek a stay will often make it unfair for

the court to grant relief—especially if that relief may affect third parties."[27]  "On the other hand,

[the Court] will be more inclined to accommodate an appellant who has diligently but

unsuccessfully pursued a stay pending appeal, even if awarding him relief may adversely affect

third parties."[28]  "Thus, [the Court] will not only look to whether a stay has been obtained; [but]

will also inquire into whether the appellant has sought a stay pending appeal."[29]

---

[25]*Id.* at 1341 (quoting *United States ex rel. FCC v. GWI PCS 1 Inc. (In re GWI PCS 1 Inc.)*, 230 F.3d 788 (5th Cir. 2000)).

[26]*Id.*

[27]*Id.* (citing *Trone v. Roberts Farm, Inc. (In re Roberts Farms, Inc.)*, 652 F.2d 793, 798 (9th Cir. 1981) ("An entirely separate and independent ground for dismissal has also been established because Appellants have failed and neglected diligently to pursue their available remedies to obtain a stay of the objectionable orders of the Bankruptcy Court and have permitted such a comprehensive change of circumstances to occur as to render it inequitable for this court to consider the merits of the appeal.")).

[28]*Id.* (citing *Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 144 (2d Cir. 2005) (stating that "[w]e insist that a party seek a stay even if it may seem highly unlikely that the bankruptcy court will issue one")).

[29]*Id.*

Here, it is undisputed that ANR did not seek a stay of either the Sale Order or, indeed, of any order of the bankruptcy court giving rise to this appeal.  Because ANR failed to take any action in this regard, this factor weighs in favor of finding this appeal equitably moot.

2.      SUBSTANTIAL CONSUMMATION

"The second consideration in the mootness inquiry is whether the reorganization plan has been substantially consummated."[30]  "In determining whether a plan has been substantially consummated, [the Court will] apply the Bankruptcy Code's three-part definition."[31]

> The Bankruptcy Code defines "substantial consummation" of a reorganization plan as:
> "(A) transfer of all or substantially all of the property proposed by the plan to be transferred;
> (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
> (C) commencement of distribution under the plan."[32]

The very nature of a sale order in a liquidation proceeding contemplates such actions provided in the Bankruptcy Code's definition of "substantial consummation."  Once a sale order becomes effective, it is contemplated that there will be a transfer of all or substantially all of the property and a commencement of distribution.  Unlike the majority of reorganization plans, the assets are not restructured; rather, they are liquidated.  In this case, CWM's assets were sold to Rhino for $15,000,000.

---

[30]*Id.*

[31]*Sutton v. Weinman (In re Centrix Fin. LLC)*, 394 F. App'x 485, 487 (10th Cir. 2010) (unpublished).

[32]*Paige*, 584 F.3d at 1341-42 (quoting 11 U.S.C. § 1101(2)).

In this action, the Trustee and Interested Parties assert that this transaction has been substantially consummated because: "Payments have been made, possession and control of highly regulated properties have been assumed, millions of dollars of equipment and repairs have been ordered, people have been hired, and extensive work has already gone into preparing to mine coal."[33]  ANR contends that it is of no consequence that the Sale Order is substantially consummated because it is not seeking to unravel the sale; rather, it is seeking intermediate relief that only represents a small percentage of the CWM estate.[34]

The intermediate relief that ANR seeks is the interpretation of the ANR Agreement. Rhino indicates that it relied upon the bankruptcy court's interpretation of the ANR Agreement in agreeing to purchase the CWM estate.  Thus, were ANR granted the relief it seeks—a differing interpretation of the ANR Agreement—it could affect the validity of the Sale Order.  The intermediate relief, if granted, would at the very least call into question the validity of a portion of the Sale Order and possibly require the unwinding of that portion of the Sale Order. Therefore, ANR's assertion that it is not seeking any relief in this appeal that would affect the Sale Order is disingenuous.  For this reason, the Court finds ANR's defense on this factor unpersuasive and this factor weighs in favor of the Court finding this appeal equitably moot.

---

[33]Docket No. 22, at 21 (citing Docket No. 23 Exs. 5, 6).

[34]*See* Docket No. 25, at 15.

3.     EFFECT ON THIRD-PARTIES

"The effects that reversal will have on non-party creditors is probably the foremost concern in [the Court's] analysis of equitable mootness."[35]

It is because of this factor that Rhino and Castle Valley have intervened in this Motion. As interested parties—the purchasers of the CWM mining estate—both Rhino and Castle Valley are concerned with how this Court's ruling may impact property they have rightfully purchased and invested substantial sums in maintaining and developing.  After expending said considerable sums of money and time in reliance on the Sale Order, Rhino and Castle Valley are compelled to defend the assets they purchased.  It is the rights of Rhino and Castle Valley, along with those creditors who stand to receive payout from the amounts paid by Rhino and Castle Valley, with which this Court is most concerned.

Because Rhino, Castle Valley, and other creditors stand to lose the value of their exchange through this appeal, this factor weighs in favor of finding this appeal equitably moot.

4.     PUBLIC POLICY

"This factor 'reflects a court's concern for striking the proper balance between the equitable considerations of finality and good faith reliance on a judgment and the competing

---

[35]*Paige*, 584 F.3d at 1343 (quoting *Wooley v. Faulkner (In re SI Restructuring, Inc.)*, 542 F.3d 131, 136 (5th Cir. 2008) ("The ultimate question to be decided is whether the Court can grant relief without undermining the plan and, thereby, affecting third parties.")).

interests that underlie the right of a party to seek review of a bankruptcy court order adversely affecting him.'"[36]

> In [*Paige*], [the Tenth Circuit] acknowledged that "completed acts in accordance with an unstayed order of the bankruptcy court must not thereafter be routinely vulnerable to nullification if a plan of reorganization is to succeed."  And [further] found it "equally important that a court not reverse a bankruptcy plan if an appellate reversal . . . would create a nightmarish situation for the bankruptcy court on remand and make reconstructive relief extremely improbable."  But [the Tenth Circuit] also considered the seriousness of the appeal allegations as a "countervailing concern" that could weigh against a determination of equitable mootness.[37]

As has been discussed previously, Rhino, Castle Valley, and CWM's creditors have an interest in the finality of the unstayed Sale Order.  They have exercised good faith reliance on the Sale Order being a valid judgment of the bankruptcy court entitling them to the proceeds for which they have provided value or, in the case of the creditors, for which they are owed for past value provided.  While cognizant of ANR's right to seek review of the bankruptcy court's orders—which, undoubtedly, have an effect on ANR—here, the Court is persuaded that ANR, in a delinquent fashion, is seeking a second day in Court.

Furthermore, the issues raised in this appeal are not "troubling allegations" of bad faith dealings or a lack of disinterestedness on the part fo the Trustee.[38]  The majority of issues raised

---

[36]*Id.* at 1347 (quoting *First Union Real Estate Equity & Mortg. Inv. v. Club Assocs. (In re Club Assocs.)*, 956 F.2d 1065, 1069 (11th Cir. 1992)).

[37]*In re Centrix*, 394 F. App'x at 492 (quoting *Paige*, 584 F.3d at 1347).

[38]*Paige*, 584 F.3d at 1347 ("[T]here are countervailing concerns that outweigh the public policy interest in finality of bankruptcy court decisions in this case.  [Appellant] raises troubling allegations of bad-faith dealings between the debtor . . . and the trustee, and of a lack of disinterestedness on the part of the trustee.").

by ANR relate to the bankruptcy court's interpretation of the ANR and LMU Agreements. Allegations of faulty contract interpretation are not of themselves troubling allegations that "bring to light some issue that [speaks] to the integrity of the bankruptcy process."[39]  For these reasons, the Court find this factor weighs heavily in favor of finding this appeal equitably moot.

     5.      IMPACT ON NEW REORGANIZATION

"The fifth factor a court should consider in determining whether an appeal is equitably moot is the impact of reversal upon the likelihood of a new, successful reorganization."[40]

Here, the Trustee and Interested Parties have presented evidence that if the Sale Order were reversed it is unlikely the same value could once more be recuperated from the CWM assets.  The coal operating agreements, which constitute the majority of the CWM estate purchased by Rhino, require that the property be continuously mined.  The Trustee has attested that if the sale were reversed he would be unable to comply with this requirement.  Though not necessarily relevant on this factor, Rhino has expended significant sums of money bringing the estate in compliance with the continuous operations clause and making the CWM mines once more operational and productive.

Here, ANR would have the Court believe that the removal of its coal operating agreement would not reduce the value of the CWM estate or otherwise affect the sale.  ANR does not dispute that, were the sale to be unwound, it would be highly unlikely that a comparable sale

---

[39]*Id.*

[40]*In re Centrix*, 394 F. App'x at 493.

could be made.  Therefore, the Court finds that this factor weighs in favor of finding this appeal equitably moot.

      6.     MERITS

"The final factor in evaluating whether an appeal is equitably moot involves a 'quick look at the merits of appellant's challenge to the plan' to determine if it is 'legally meritorious or equitably compelling.'"[41]

Here, the Trustee and Interested Parties assert that "ANR's appeal of the ANR Order is close to frivolous."[42]  ANR does not rally any defense to counter this characterization.  Though without sufficient information to make a definite determination whether this appeal is meritorious, the Court would note that ANR's claims do not appear to be substantively compelling.  Therefore, this factor weighs in favor of finding the appeal equitably moot.

      7.     CONCLUSION

In sum, the Court finds that review of the above factors supports a finding that this appeal is equitably moot.

### III.  CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that the Trustee, Rhino, and Castle Valley's Joint Motion for Dismissal of Appeal as Moot (Docket No. 21) is GRANTED.  The Clerk of Court is directed to close this case forthwith.

---

[41]*Id*. at 493-94 (quoting *Paige*, 584 F.3d at 1339).

[42]Docket No. 22, at 23.

DATED   May 2, 2012.

BY THE COURT:

_____
TED STEWART
United States District Judge